CRAIG MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ABRAHAM FINE (CABN 292647)
BENJAMIN K. KLEINMAN (NYBN 5358189)
CYNTHIA FREY (DCBN 475889)
Assistant United States Attorneys

> 450 Golden Gate Avenue, Box 36055
> San Francisco, California 94102-3495
> Telephone: (415) 436-7077
> Abraham.fine@usdoj.gov
> Benjamin.kleinman2@usdoj.gov
> Cynthia.frey@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRENDAN JACY TATUM,<br><br>Defendant. | CASE NO. 21-CR-0374-MMC<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date:      May 6, 2026<br>Time:      2:15 p.m.<br>Court:     Honorable Maxine M. Chesney |

**INTRODUCTION**

Defendant Brendan Jacy Tatum was a corrupt police officer for several years. In 2015 and 2016, Defendant stole marijuana from the Rohnert Park police station, extorted marijuana from drivers on Highway 101, sold marijuana for personal profit, and cheated on his taxes, netting himself over $400,000 in illicit proceeds. Then, in December 2017, Defendant teamed up with fellow officer Joseph Huffaker and conspired to pull over drivers suspected of possessing large amounts of marijuana, falsely told those drivers that they were federal agents working for the ATF, stole the drivers' marijuana, and

UNITED STATES' SENTENCING MEMORANDUM    1
21-CR-0374-MMC

sold the marijuana to line their own pockets.  Two months later, when others in law enforcement and in the media started asking questions about their illegal activity, Defendant and Huffaker obstructed justice by composing a false police report, which Defendant sent to an FBI agent.

Shortly after being charged in 2021, Defendant pled guilty and agreed to cooperate with the government.  Defendant admitted to his crimes, met with the government on several occasions, provided truthful information, and testified at Huffaker's trial.  In addition to his own testimony, Defendant provided information about William Timmins' role in the scheme (of which the government was not aware) and also revealed key evidence about Defendant and Huffaker's obstruction of justice conspiracy.  Defendant's cooperation provided substantial assistance to the government's case.  It is rare for police officers to testify against fellow members of law enforcement and it is important that the ultimate sentence imposed on Defendant provide an incentive in future cases for officers to testify truthfully about police misconduct.  As set forth below, the government has evaluated Defendant's cooperation and now moves for the equivalent of a six-level downward variance based on the substantial assistance Defendant has provided.

No doubt, Defendant's years-long corruption spree was an egregious abuse of the public trust that demands a significant custodial sentence.  But Defendant should also get substantial credit for his cooperation.  Taking into account Defendant's serious criminal conduct, Defendant's early acceptance of responsibility and cooperation, as well as the other § 3553(a) factors, the government respectfully recommends that the Court sentence Defendant to 46 months[1] imprisonment, a three-year term of supervised release (with the conditions recommended by probation), and a mandatory $300 special assessment.  The government also respectfully requests that the Court order $23,000 in restitution to B.L. (joint and several with Huffaker), $278,145.70 in restitution to the IRS, and a forfeiture money

---

[1] As set forth below, despite his significant cooperation, the government respectfully submits that Defendant is more culpable than Huffaker and recommends that he receive a greater custodial sentence than Huffaker.  In January of this year, the government submitted a sentencing memorandum recommending Huffaker be sentenced to 63 months in custody, which corresponds to the low-end of Huffaker's Guidelines range.  Dkt. No. 376.  Given the interest in avoiding unwarranted sentencing disparities, however, the government now recommends that Huffaker receive a sentence below 46 months in custody given the relative difference in culpability between Defendant and Huffaker, even accounting for Defendant's significant cooperation.

UNITED STATES' SENTENCING MEMORANDUM   2
21-CR-0374-MMC

judgment of $198,854.30.[2]

## BACKGROUND

### I.   Offense Conduct

Defendant Brendan Jacy Tatum and his co-conspirator, Joseph Huffaker, were police officers with the City of Rohnert Park's Department of Public Safety ("RPDPS").  Probation Presentence Report ("PSR") at ¶ 8.  In 2015 and 2016, Defendant and Huffaker were part of the RPDPS interdiction team that was tasked with seizing illegal drugs along highway 101.  *Id.*, ¶ 9.  Defendant was the sergeant in charge of the interdiction team and Huffaker was a member of that team.  *Id.*  Defendant agreed in his plea agreement and testified during Huffaker's trial that while he led the interdiction team, he regularly stole marijuana from the RPDPS station and extorted marijuana from drivers, which he sold for personal profit.  *Id.*, ¶¶ 15-18.  The PSR describes several of the specific extortions in 2015 and 2016 that Defendant admitted to.  *Id.*  The RPDPS interdiction team was terminated in January 2017 after California legalized the recreational use of marijuana and the Sonoma County District Attorney stated that the office would no longer pursue marijuana prosecutions.  *Id.*, ¶ 9.

After interdiction operations ceased, Defendant and Huffaker attempted to get interdiction operations back up and running, but RPDPS management rejected these attempts.  In December 2017, Defendant and Huffaker conspired to pull over drivers suspected of possessing large amounts of marijuana, told those drivers that they were federal agents working for the ATF, seized the drivers' marijuana, and sold the marijuana through a dealer.  *Id.*, ¶¶ 19-20.  While Defendant testified that he and Huffaker extorted several victims during December of 2017, the evidence at trial focused on the stop of B.L. on December 18, 2017.  *Id.*, ¶ 19.  On that date, Defendant and Huffaker, wearing plain clothes, tactical vests, and driving in an unmarked black SUV, pulled over B.L. near the Sonoma-Mendocino border and identified themselves as ATF agents.  *Id.*  Defendant and Huffaker told B.L. that he had two

---

[2] According to defense counsel, shortly after pleading guilty, Defendant set aside and provided to his attorney $500,000 for the purpose of covering restitution and forfeiture payments in connection with this case.  The IRS has calculated that Defendant owes it $278,145.70 in restitution.  Furthermore, Defendant owes, joint and several with Huffaker, $23,000 in restitution to B.L.  That leaves $198,854.30 remaining from Defendant's initial $500,000 for forfeiture of illegally obtained proceeds.  The undersigned Assistant United States Attorneys have conferred with the Office's Asset Forfeiture Unit and agree that this amount is appropriate for Defendant's forfeiture payment.

choices: he could give them his 23 pounds of marijuana (valued about approximately $1,000/pound) or they could seize the marijuana and "take him into the station." *Id.* When B.L. asked for identification, they asked if he "wanted to make a federal case out of it." *Id.* B.L. testified that he was in shock and thought he was being robbed. Defendant and Huffaker then extorted B.L.'s marijuana without providing any documentation. *Id.*

Two months after their December 2017 extortions, after marijuana seizures by local police had been reported in the media and heat was starting to come down on Defendant and Huffaker, they conspired to create a false police report and false press release regarding the December 18, 2017, extortion. *Id.*, ¶¶ 20-22. Defendant then submitted those false documents to the FBI in February 2018. *Id.*, ¶ 22. Shortly thereafter, RPDPS opened an internal investigation and Defendant and Huffaker coordinated to give false testimony during those proceedings. *See* Dkt. No. 357 at 97-102 (Defendant's direct testimony). Defendant and Huffaker also purchased $13,000 sniper rifles and related firearm accessories shortly after committing these extortions. *Id.* at 68-72.

Defendant admitted to making approximately $443,059 in illicit proceeds during 2015 and 2016, none of which was reported on his tax returns. *Id.*, ¶ 14. During this time period, Defendant and his family members had hundreds of thousands of dollars in unexplained cash deposits, many of which were under $10,000, including one day where there were eight separate deposits totaling $159,000. *Id.*, ¶ 23. By keeping the deposits under $10,000, Defendant was able to keep the receiving banks from filing currency transaction reports with the IRS. *Id.*, ¶ 24. The IRS identified unreported cash receipts of $443,059, resulting in $146,701 being owed to the IRS for the 2016 tax year. *Id.*

## II.    <u>Procedural Posture</u>

Defendant and Huffaker were originally charged by complaint in March 2021 and then by indictment, filed on September 21, 2021, with conspiracy to commit extortion under color of official right, in violation of 18 U.S.C. § 1951, as well as substantive counts of extortion under color of official right. PSR ¶ 1. Defendant was also charged in that indictment with obstruction of justice and tax evasion. *Id.* In December of 2021, Defendant pled guilty to the conspiracy with Huffaker to commit extortion under color of official right (Count 1), falsifying records in a federal investigation (Count 4), and tax evasion (Count 5) and agreed to cooperate with the government. *Id.*, ¶ 7.

UNITED STATES' SENTENCING MEMORANDUM    4
21-CR-0374-MMC

Jury selection in Huffaker's trial began on July 3, 2025.  Defendant testified over the course of three days during Huffaker's trial.  On July 11, 2025, the jury found Huffaker guilty of the six counts pending against him.  *Id.*, ¶ 4.  Huffaker's sentencing has been continued several times and both Defendant and Huffaker are set to be sentenced on May 6, 2026.

## ARGUMENT

## I.    Legal Standard

The United States Sentencing Guidelines serve as "the starting point and initial benchmark" of any sentencing process and are to be kept in mind throughout the process.  *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007).  The overarching goal of sentencing, as set forth by Congress, is for the Court is to "impose a sentence sufficient, but not greater than necessary."  *Carty*, 520 F.3d at 991.  In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), to include:

> (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2)    the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (3)    the need for the sentence imposed to afford adequate deterrence to criminal conduct;
>
> (4)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

## II.    Sentencing Guidelines Calculation

The government agrees with the Sentencing Guidelines set forth in the PSR, which calculates Defendant's offense level is as follows:

|  | U.S.S.G. Section | Level/Points |
|---|---|---|
| Base offense level | §2C1.1 | 14 |

| Specific offense characteristics | § 2C.1.1(b)(1) – Offense involved more than one extortion | +2 |
|---|---|---|
| | § 2C1.1(b)(2) – Value of marijuana extorted greater than $250,000 | +12 |
| | 2C1.1(b)(3) – Defendant was a public official in a sensitive position | +4 |
| | 3C1.1 – Obstruction enhancement | +2 |
| Adjusted offense level | | 34[3] |
| Zero Point Offender | §4C1.1 | -2 |
| Acceptance of Responsibility | §3E1.1(a) | -3 |
| Total offense level | | 29 |
| Criminal History Category | | I |
| **RANGE** | | 87-108 months |

PSR ¶¶ 35-58; 112.

The Probation Officer concluded that Defendant's criminal history score is 0, and he therefore falls into Criminal History Category I. *Id*., ¶¶ 59-65. As reflected in the PSR, the Guidelines range for imprisonment associated with adjusted offense level 29 and Criminal History Category I is 87 to 108 months. *Id*. ¶ 112. The Probation Officer recommends a 24-month sentence. *Id*. at Sentencing Recommendation.

### III.   Downward Variance for Substantial Assistance

Section 5K1.1 of the United States Sentencing Guidelines provides that upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the Court may vary downwards from the applicable Guidelines range on that basis. Section 5K1.1 enumerates five non-exclusive factors that the Court may consider. The government has fairly evaluated Defendant's assistance and submits that application of the relevant factors warrants the six-level downward variance recommended by the government.

---

[3] The tax conviction does not increase Defendant's Offense Level. *See* PSR ¶¶ 45-53.

UNITED STATES' SENTENCING MEMORANDUM   6
21-CR-0374-MMC

**A.      The Significance and Usefulness of the Assistance**

Under the first § 5K1.1 factor, the Court evaluates the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered. Here, Defendant provided significant and useful assistance in telling the government about his and Huffaker's unlawful conduct, including information previously unknown to the government. As to Defendant and Huffaker's core extortion scheme, Defendant provided details about how he and Huffaker conducted the extortions, their communication pattern before, during, and after the extortions, as well as financial details about their scheme. Defendant further told the government that he and Huffaker sold the marijuana they extorted to William Timmins, and specifically described an event where Defendant and Huffaker met Timmins on the side of the highway and loaded tens of pounds of marijuana into his car. Without Defendant's cooperation, the government would likely not have learned of Timmins' involvement, which provided a missing puzzle piece in the government's story and also set the stage for Timmins' impactful testimony at trial.

In addition, Defendant told the government about his and Huffaker's obstruction of justice in February 2018, which obstruction the government did not have evidence of before speaking with Defendant. Specifically, Defendant explained that he and Huffaker conspired to falsify a press release and police report and sent those items to an FBI agent. Defendant provided to the government emails in which he and Huffaker exchanged drafts of the falsified documents. Defendant's cooperation as to this matter led to the additional charges against Defendant and Huffaker for obstruction of justice, which the jury convicted Huffaker of at trial.

Finally, Defendant's cooperation was significant because it helped convict a corrupt police officer. While Defendant was more culpable than his co-conspirator, the government does not view Huffaker as some sort of small fish. Huffaker abused the public trust in a consequential way and he is a serious criminal. As such, Defendant's cooperation not only helped convict a corrupt member of law enforcement, but also set an example for future police defendants who are considering accepting responsibility and telling the truth about other officers' misconduct.

**B.      The Truthfulness, Completeness, and Reliability of Information or Testimony**

The second factor is the truthfulness, completeness, and reliability of the information or

UNITED STATES' SENTENCING MEMORANDUM   7
21-CR-0374-MMC

testimony provided by the defendant. Defendant testified at trial over the course of three days and was subjected to vigorous cross-examination. His testimony was lucid, consistent and credible. His testimony was corroborated in significant respects by other evidence the government was able to locate and introduce at trial, including phone records, location data, financial records, emails, and the testimony of other witnesses. The jury clearly believed Defendant's testimony, as Huffaker was convicted on all counts.

### C.    The Nature and Extent of the Assistance

The third factor examines the nature and extent of the defendant's assistance. As described herein, Defendant's cooperation has substantially assisted the government's investigation and prosecution of Huffaker. Defendant participated in several pretrial interviews and preparation sessions and testified over the course of three days at trial. He was available to the prosecution and FBI on numerous occasions to answer questions and provide follow-up information.

Defendant's testimony was a significant piece of the government's presentation at trial. He provided an insider narrative that brought the rest of the evidence together to tell a clear, cogent, and logical story. Furthermore, as described above, Defendant's assistance led directly to the revelation of the obstruction of justice as well as the impactful testimony of William Timmins.

### D.    Any Injury Suffered or Danger of Risk of Injury

The fourth factor is whether the defendant or his family suffered any injury or danger or risk of injury resulting from his assistance. The government is unaware of any specific danger or risk Defendant or his family suffered as a result of his cooperation. However, in addition to the general risks associated with being a cooperating witness in prison, Defendant faces the potential risk of future retaliation at the hands of law enforcement by virtue of his cooperation against police officers.

### E.    The Timeliness of the Assistance

The final factor evaluates the timeliness of the defendant's assistance. Defendant pled guilty in December 2021, after being charged by complaint in March of 2021 and by indictment in September of 2021. His assistance was timely, as Defendant agreed to plead guilty and cooperate just months after being charged and before he had engaged in any pretrial litigation. Moreover, Defendant's timely cooperation permitted the government to obtain a superseding indictment against Huffaker, which

UNITED STATES' SENTENCING MEMORANDUM    8
21-CR-0374-MMC

included obstruction charges, as well as to interview Timmins. In addition, as set forth above, shortly after pleading guilty, Defendant set aside and provided to his attorney $500,000 for the purpose of covering restitution and forfeiture payments in connection with this case.

## IV.    The United States' Sentencing Recommendation

Based on a consideration of the Guidelines, Defendant's egregious conduct coupled with his significant cooperation, and the factors in Section 3553(a), the United States submits that a sentence of 46 months' imprisonment, along with a three-year term of supervised release, a restitution order of $23,000 to B.L. (joint and several with Huffaker), $278,145.70 in restitution to the IRS, and a forfeiture money judgment of $198,854.30, is sufficient, but not greater than necessary, to comply with the factors set out above.

Primarily, Defendant's years-long corruption spree was egregious. As set forth above, he stole marijuana from the Rohnert Park police station, sold it for personal profit to the tune of hundreds of thousands of dollars, and cheated on his taxes. Then, he teamed up with Huffaker to extort marijuana from vulnerable victims on the highway by fraudulently impersonating a federal agent. When the walls began to close in, Defendant and Huffaker obstructed justice in an attempt to cover up their criminal conduct.

The applicable Guidelines range of 87 to 108 months imprisonment reflects the seriousness of Defendant's conduct, as well as the harm caused to the direct victims and the societal harm caused by Defendant's betrayal of the public trust. Moreover, general deterrence and the message this case sends to the public are important principles to consider. Other police officers who are in Defendant's position now and in the future must know that, on top of a federal felony conviction, committing corrupt acts will result in serious prison time.

Defendant's conduct, however, must be balanced against his cooperation and the substantial assistance he provided to the government's case. It is unusual for police officers to agree to cooperate in a prosecution against their fellow officers. Furthermore, it is important that the ultimate sentence imposed on Defendant provide incentive to officers in future cases to cooperate with investigations into police misconduct. Defendant's cooperation and testimony were crucial in bringing to full light and public scrutiny the conduct in which he and Huffaker engaged. Future efforts to uncover public

corruption will be aided by a sentence that reflects the benefit of such cooperation.

Finally, it is important to consider Defendant's role in the offense as compared to Huffaker. Defendant was Huffaker's sergeant and supervisor, Defendant had the connection to Timmins, Defendant handled the illicitly-obtained money, and Defendant led the obstruction of justice. No doubt, Defendant was the driving force behind his and Huffaker's corruption and obstruction of justice conspiracies. Moreover, before he engaged in criminal conduct with Huffaker, Defendant engaged in significant criminal conduct on his own over the course of multiple years. Accordingly, even though Defendant should get significant credit for his cooperation, the government respectfully recommends that he still receive a sentence greater than Huffaker given the significant difference in their criminal conduct.[4]

## CONCLUSION

For the foregoing reasons, the government recommends that the Court sentence Defendant to 46 months in prison, coupled with a three-year term of supervised release, a restitution order of $23,000 to B.L. (joint and several with Huffaker), $278,145.70 in restitution to the IRS, a forfeiture money judgment of $198,854.30, and a $300 special assessment.

DATED: April 29, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
ABRAHAM FINE
BENJAMIN KLEINMAN
CYNTHIA FREY
Assistant United States Attorneys

---

[4] As set forth above, the government previously filed a sentencing memorandum recommending that Huffaker receive a low-end Guidelines sentence of 63 months in custody. Dkt. No. 376. The government stands by its position that §§ 3553(a)(1) – (a)(3) do not provide a basis to vary downwards from the Guidelines range as calculated for Huffaker. However, § 3553(a)(4) describes the interest in avoiding unwarranted sentencing disparities. Given Defendant's significantly more egregious conduct as compared to Huffaker, the government respectfully submits that Huffaker receiving more time than Tatum may result in an unwarranted sentencing disparity given their relative levels of culpability. As such, the government now recommends that Huffaker receive less time than Defendant, and thus that the Court sentence Huffaker to a term less than 46 months in custody.

UNITED STATES' SENTENCING MEMORANDUM   10
21-CR-0374-MMC